**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Yolanda Rangel, | No. CV-19-00875-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the Commissioner of Social Security's ("Commissioner") denial of Plaintiff's application for Title II Disability Insurance Benefits under the Social Security Act ("Act"). Plaintiff filed a Complaint seeking judicial review of the decision. (Doc. 1.) The Court now considers Plaintiff's Opening Brief (Doc. 15, "Pl. Br."), the Commissioner's Motion for Remand In Lieu Of Answering Brief (Doc. 20, "Def. Br."), Plaintiff's Reply (Doc. 22, "Reply"), and the Administrative Record (Doc. 12, "R.").

This case is somewhat unusual in that all parties agree the administrative law judge ("ALJ") committed reversible error. The only disputed issue is whether this Court should remedy that error by remanding for an award of benefits (Plaintiff's position) or by remanding for further administrative proceedings (the Commissioner's position). For the following reasons, the Court agrees with the Commissioner that the most appropriate outcome is to remand for further proceedings.

## I.     BACKGROUND

Plaintiff filed her application on August 13, 2014 and alleged disability as of

November 1, 2014.[1]  (R. at 22.) The Commissioner denied the application initially and upon reconsideration.  (*Id.*)  A hearing was held before an ALJ who again denied the application. (*Id.* at 22–32 [ALJ decision], 43–77 [transcript].)  The Appeals Council upheld the ALJ's decision and it became final.  (*Id.* at 1–3.)

The ALJ found "severe" impairments of spinal stenosis, carpal tunnel syndrome, migraine headaches, and urinary incontinence.  (*Id.* at 24.)  Despite these impairments, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform work at the "sedentary" level, except that she could lift and carry 15 pounds but could not bend, twist, or reach overhead.  (*Id.* at 26.)  Based on these findings and testimony from a vocational expert ("VE"), the ALJ concluded that Plaintiff could perform her past relevant work (as a receptionist and patient advocate) and therefore was not disabled.  (*Id.* at 31.)

## II.    LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision.  *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The Court may set aside an ALJ's disability determination only if the determination is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.  *Id*.  To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence."  *Id*.  Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).  However, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that

---

[1]    The alleged onset date was initially January 1, 2012 but was later amended by Plaintiff to November 1, 2014.  (R. at 25, 44.)

1   attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc.*
2   *Sec.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

3       To determine whether a claimant is disabled for purposes of the Act, the ALJ
4   follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of
5   proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett*
6   *v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether
7   the claimant is presently engaging in substantial gainful activity. 20 C.F.R. §
8   404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id*. At step two,
9   the ALJ determines whether the claimant has a "severe" medically determinable physical
10  or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled,
11  and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's
12  impairment or combination of impairments meets or medically equals an impairment listed
13  in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so,
14  the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step
15  four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the
16  claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).
17  If so, the claimant is not disabled and the inquiry ends. *Id*. If not, the ALJ proceeds to the
18  fifth and final step, which is whether the claimant can perform any other work in the
19  national economy based on the claimant's RFC, age, education, and work experience. 20
20  C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is
21  disabled. *Id*.

22  **III.   ANALYSIS**

23      **A.   The ALJ Erred in Rejecting Plaintiff's Testimony**

24      Plaintiff's first assignment of error is that the ALJ improperly rejected her subjective
25  pain and symptom testimony. (Pl. Br. at 3–10.) The Commissioner agrees, conceding that
26  "the ALJ did not adequately articulate how the RFC finding was supported" because (1)
27  "[a]lthough the ALJ correctly observed that Plaintiff had been able to work with her
28  longstanding back condition, the ALJ did not explain why she rejected Plaintiff's allegation

that her condition worsened in late 2014," (2) "the ALJ found that Plaintiff's need for a urinary catheter would not interfere with the exertion required in sedentary work, but Plaintiff's need for a catheter was due to bladder spasm and not exertion," and (3) "the ALJ found that Plaintiff's migraines were controlled with medication, [but] Plaintiff's history of Botox injections appeared to contradict this finding."  (Def. Br. at 6–8.)

Given this concession, the Court finds reversible error.[2]

### B.   The ALJ Erred In Evaluating Medical Opinion Evidence.

Plaintiff's next assignment of error is that the ALJ improperly rejected the medical opinions of her treating nurse practitioners ("NP"), Rachel Daley and Lori Burke. (Pl. Br. at 10–16.)   The Commissioner does not address this argument, on the merits, in his response.[3]

"The ALJ must consider all medical opinion evidence."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  "When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).   In evaluating any medical opinion, the ALJ may consider: (1) whether the source examined the claimant; (2) the length, frequency, nature, and extent of any treatment relationship; (3) the degree of support the opinion has, particularly from objective medical evidence; (4) the consistency of the opinion with the record as a whole; (5) the source's specialization; and (6) "other factors."  20 C.F.R. § 404.1527(c).   *See also* 20 C.F.R. § 404.1527(f) (these

---

[2]    This analysis also addresses Plaintiff's argument that her urinary incontinence and migraine headaches were not properly incorporated into the RFC.  (*See* Pl. Br. at 16–18.)

[3]    Instead, the Commissioner contends this assignment of error is "moot" in light of his concession that the ALJ erred when rejecting Plaintiff's symptom testimony.  (Def. Br. at 7.)  This argument lacks merit.  Plaintiff has requested a remand for an award of benefits pursuant to the "credit-as-true" rule. (Pl. Br. at 18.)  The Court must address each allegation of improperly rejected evidence in a case involving such a claim because the "credit-as-true" framework calls for consideration of, *inter alia*, whether "the improperly discredited evidence" establishes disability.  *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). The Commissioner is reminded that under LRCiv 16.1(b) he is required to "respond specifically to each issue raised by Plaintiff."

1  factors apply to opinions from medical sources who are not "acceptable" medical sources).

2      At the time Plaintiff filed her application, a nurse practitioner was not an

3  "acceptable" medical source. *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017).[4]  Thus,

4  in order to reject the opinions of NPs Daley and Burke, the ALJ only needed to provide

5  "germane" reasons.  *Id.* at 906.

6  **1.    The ALJ erred when rejecting NP Daley's opinion.**

7      NP Daley's opinion—which was rendered on 3.5 by 4-inch prescription note—

8  states in full: "Patient work restricted for back pain: no bending, twist, or heavy lifting

9  greater than 10-15 lbs, or reaching."  (R. at 527.)  As noted by the ALJ, the "majority" of

10 these restrictions were adopted.  (*Id.* at 30.)  The only restriction not adopted was the "no

11 reaching" restriction.  Instead, the ALJ restricted Plaintiff from "overhead" reaching.  (*Id.*

12 at 26.)

13      The distinction between "overhead" reaching and "no" reaching is crucial because

14 the VE testified that a limitation of "no reaching" (*i.e.*, in all directions, not just overhead)

15 would preclude all employment.  (*Id.* at 73.)  The sole reason the ALJ provided for rejecting

16 the "no reaching" component of NP Daley's opinion was that NP Daley is an "unacceptable

17 medical source."  (*Id.* at 26.)

18      This was error.  NP Daley's status as an "unacceptable" medical source is not,

19 standing alone, a germane reason to reject her opinion.  *See, e.g., Camilli v. Berryhill*, 2019

20 WL 3412921, *8 (N.D. Cal. 2019) ("An ALJ cannot simply disregard the opinions of

21 medical providers such as a nurse practitioner simply because they are not within the

22 definition of 'acceptable medical sources.'  While those providers' opinions are not entitled

23 to the same deference as other medical providers, an ALJ may give less deference to 'other

24 sources' only if the ALJ gives reasons germane to each witness for doing so.") (citations

25 omitted).

26      …

27

28 ---
   [4]      Under current regulations, a nurse practitioner is considered an "acceptable"
   medical source.  20 C.F.R. § 404.1502(a)(7).

1

**2.     The ALJ did not err when rejecting NP Burke's opinions.**

2          NP Burke treated Plaintiff from February 3, 2016 to March 17, 2017.  (R. at 1983–

3    2051.)  NP Burke rendered two opinions regarding Plaintiff's ability to perform work-

4    related physical activities.  (*Id.* at 1724–25 [September 2016 opinion], 1801–02 [March

5    2017 opinion].) The opinions are virtually identical, although the later one is slightly more

6    restrictive.   NP Burke opined that Plaintiff can sit for less than 2 hours of an 8-hour

7    workday, and only for 5-10 minutes at a time; can stand or walk for less than 2 hours of an

8    8-hour workday, and "only [with a] cane/walker"; and can lift and carry approximately 1

9    pound.  (*Id.* at 1801.)  NP Burke also opined that Plaintiff can use her upper and lower

10   extremities for 0-20% of the workday and can bend, reach, or stoop for 0-20% of the

11   workday.  (*Id.*)  NP Burke further opined that Plaintiff would be off-task for more than

12   21% of an 8-hour workday.  (*Id.* at 1802.)  NP Burke stated that her opinions were based

13   on her own treatment records, ER records, neurology consultations, cardiology

14   consultations, and GI consultations.  (*Id.*)

15          The ALJ afforded "little" weight to NP Burke's opinions for two reasons.  (*Id.* at

16   30.)  First, the ALJ found that they were not supported by objective findings.  (*Id.*, citing

17   *id* at 2100–10 [neurology records], 2111–49 [ER records].)  Second, the ALJ noted that NP

18   Burke is "an unacceptable medical source." (*Id.*)

19          The ALJ's first reason for rejecting NP Burke's opinions is germane and supported

20   by substantial evidence.  In February 2016, Plaintiff met with NP Burke for a referral for

21   pain management. (*Id.* at 1983.)[5]  Upon physical examination, NP Burke noted normal

22   ─────────────────────

23   [5]      In September 2015, Plaintiff had been discharged from a different pain management
     clinic after her husband became argumentative and aggressive with the clinical staff over
24   their decision to not increase the dosage of Plaintiff's pain medications. (R. at 1237.)  The
     staff noted that Plaintiff frequently appeared "oversedated and/or unsteady on her feet"
25   when she came to the clinic.  (*Id.*)  Plaintiff and her husband refused repeated requests to
     leave the clinic following receipt of the disengagement letter and only left once the staff
26   threatened to call the police.  (*Id.*)  During the visit with NP Burke in February 2016,
     Plaintiff's speech was again slurred and Plaintiff fell asleep in the waiting and exam rooms.
27   (*Id.* at 1983.)  NP Burke thus advised Plaintiff to "cut back on pain meds" and to see pain
     management for adjustments.  (*Id.*)

28

range of motion in Plaintiff's spine and all extremities. (*Id.* at 1985–86.) She further noted normal strength and normal muscle bulk in all extremities. (*Id.* at 1986.) Moreover, she noted a normal gait and that Plaintiff was able to stand without difficulty and able to participate in an exercise program. (*Id.*) During the next appointment, NP Burke again noted normal range of motion in all of Plaintiff's extremities and no pain with motion. (*Id.* at 1990.) There were no findings made during subsequent appointments because NP Burke did not conduct a physical examination of Plaintiff's musculoskeletal system during later appointments. (*Id.* at 1992–2043.) However, during the last appointment of record, on March 17, 2017, Plaintiff requested disability paperwork and NP Burke noted, for the first time, that Plaintiff was wearing bilateral arm splints, a right knee brace, and bilateral leg wraps and was walking with a cane. (*Id.* at 2047, 2050.)

The records cited by the ALJ contradict NP Burke's opinions. In particular, records from the neurologist indicate Plaintiff had a normal range of motion and normal strength in the extremities and a normal gait, although she did apparently have "shaking movements" when walking. (*Id.* at 2100, 2104.) An MRI of Plaintiff's spine revealed normal findings except for "mild central disc bulging" at the L4/5 spine. (*Id.* at 2107.) The ER records cited by the ALJ similarly note a normal range of motion, normal strength, and a steady gait. (*Id.* at 2113, 2128, 2136.) Additionally, Plaintiff "denied back pain, joint pain, joint swelling, muscle spasms, and neck pain" during an October 2015 visit with her pain specialist. (*Id.* at 1242.) Objective findings at this appointment consisted of normal strength and tone in all extremities and normal gait and station. (*Id.* at 1244–45.) Last, although NP Burke opined that Plaintiff could only walk with a cane, Plaintiff's pain specialist noted in April 2017 that Plaintiff was using "no assistive devices" and that she had a full range of motion and 4/5 strength in all extremities. (*Id.* at 2073–74.) Her gait, however, was noted as "painful." (*Id.* at 2074.)

Given this backdrop, substantial evidence supports the ALJ's conclusion that NP Burke's opinions were not supported by objective findings, and that conclusion constitutes a germane reason to assign little weight to NP Burke's opinions. Although some of the

1   objective evidence is indicative of *some* physical limitations, it is also supportive of the

2   ALJ's conclusion that Plaintiff is capable of work at the "sedentary" level and lifting and

3   carrying 15 pounds. (*Id.* at 26.) If Plaintiff could only carry 1 pound, as NP Burke opined,

4   then providers would likely have noted something less than "normal" or "4/5" strength.

5          Turning to the second reason, NP Burke's status as an "unacceptable medical

6   source" was not (as with NP Daley) a germane reason, by itself, to reject her opinions. But

7   the error is harmless as to NP Burke because the ALJ proffered a separate germane reason

8   for rejecting her opinions. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th

9   Cir. 2009) (finding ALJ's reliance on an invalid reason to discredit claimant was "harmless

10  error" where ALJ had also relied on other reasons that were valid).

11      **C.   The ALJ Did Not Commit Reversible Error In Denying Plaintiff's Request**

12          **To Subpoena The State Agency Physicians.**

13         Plaintiff filed a timely written request for a subpoena so she could cross-examine

14  the state agency physicians (R. at 313–318), but the ALJ denied the request because it was

15  "unduly burdensome" (*id.* at 22.) Plaintiff argues this was an "insufficient basis" to deny

16  her request and that because the ALJ assigned "partial weight" to the state agency

17  physicians' opinions, her request to cross-examine them should have been granted. (Pl.

18  Br. at 15–16.) The Commissioner does not respond.

19         Under 42 U.S.C. § 405(d), the Commissioner has the "power to issue subp[o]enas

20  requiring the attendance and testimony of witnesses and the production of any evidence

21  that relates to any matter under investigation or in question before the Commissioner." *Id.*[6]

22  "When it is reasonably necessary for the full presentation of a case, an [ALJ] . . . may, on

23  his or her own initiative or at the request of a party, issue subpoenas for the appearance and

24  testimony of witnesses." 20 C.F.R. § 404.950(d)(1). A claimant must request a subpoena

25  in writing and therein "state the important facts that the witness . . . is expected to prove"

26

27  ---
    [6]     Plaintiff also cites provisions of HALLEX, the Social Security Administration's
    Hearings, Appeals, and Litigation Manual. (Pl. Br. at 15.) The Court does not review
28  allegations of noncompliance with HALLEX because it does not have the force and effect
    of law. *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000).

and "indicate why these facts could not be proven without issuing a subpoena." *Id.* § 404.950(d)(2).

Plaintiff has not demonstrated that the ALJ committed reversible error by rejecting her subpoena request. Notably, the ALJ *declined* to fully credit the state agency physicians' opinions—a decision that Plaintiff approves. (Pl. Br. at 15 ["Rangel does not dispute that the State agency opinions are not reliable based on the evidence herein, and they are deserving of only partial weight."].) This case is therefore distinguishable from the cases in which an ALJ's refusal to allow cross-examination was deemed to constitute reversible error. *See, e.g., Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir. 1983) (ALJ's denial of claimant's request to cross-examine certain physicians constituted an "abuse of discretion" where "the [physician's] report was so crucial to the ALJ's decision").

Moreover, all parties agree that the ALJ committed other errors that require reversal. Upon remand, Plaintiff is free to renew her request for a subpoena and to proffer additional, specific reasons why she believes cross-examination is necessary.

## IV.    REMEDY

Plaintiff asks the Court apply the "credit-as-true" rule and remand the case for an award of benefits, while the Commissioner requests a remand for further administrative proceedings. (Pl. Br. at 18; Def. Br. at 7–11.)

"An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon*, 880 F.3d at 1044. Thus, before remanding for an award of benefits, three conditions must be met: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Moreover, even if each condition is met, the Court still may remand for further administrative proceedings if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

A remand for further proceedings is most appropriate here.  Further proceedings will be useful to develop testimony and evidence concerning Plaintiff's urinary continence, which the ALJ erroneously viewed as resulting in only exertional, but not non-exertional, limitations.  Additionally, the Court has serious doubt that Plaintiff is, in fact, disabled.  As discussed, there were many normal clinical findings made with respect to Plaintiff's exertional abilities.  Moreover, the incident at Plaintiff's prior pain management clinic suggests she may be abusing her medications.  Further proceedings will be useful to explore these factual issues (and any others the Commissioner finds pertinent).

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **reversed** and that the matter is remanded for further administrative proceedings consistent with this Order.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly and terminate this case.

Dated this 15th day of May, 2020.

Dominic W. Lanza
United States District Judge

- 10 -